Haynes, J.
Petition was filed in the court of common pleas for the purpose of enjoining the collection of certain assessments,in whole or in part, that had been made by the council of the village of Clyde, upon certain property for the purpose of paving a certain street in that village, and also for the purpose of making a sewer in said street.
The particular point of contention made here is that no assessment can be made upon property abutting upon the street, in excess of 25 per cent, of the amount at which the property is entered upon the tax duplicate of Sandusky county. Testimony was offered to the court on other points which the council sought to raise, and the court passed up *511 on these questions. It will not be necessary to allude to those in the present opinion. This work, it is admitted, was performed, this improvement made under an act of the general assembly of the state of Ohio, passed on the 1st day of February, 1893, entitled “An act to authorize the council of any village that had at the last federal census, or that may have at any future census, a population of not less than 2320, nor more than 2350, to issue bonds for the purpose of improving and paving the streets, and constructing sewers, to erect or purchase an electric light plant, and to extend the public waterworks of such village.
No question is made by the counsel as to the constitutionality of this act, and the case has been tried and argued as if the act was a constitutional one, and so long as no question is made by counsel we shall make no question as to the constitutionality of the act, and_will form no opinion as to whether or not it is constitutional.
The legislature of the state of Ohio under various statutes that have passed, especially under what is called the municipal code, has provided very ample means for the improvement of streets under a separate chapter, and devoted a great many sections to the question intending to cover all desired law upon the subject very fully. Under another independent chapter they have also provided methods whereby sewers may be made by municipal corporations.
It seems, however, that the village of Clyde was not satisfied to proceed under the statutes of the state of Ohio as they existed, and that the legislature was called upon, or did pass the act in question, and whether called upon, or by its own legislative motion, the fact is that the city council accepted the provisions of this section, and acting under it, proceeded to perform the work, and so far as we know, without objections upon the part of the citizens of the village.
The first and main question that presents itself to us, *512 and which we think must measure and decide the case is, as to whether, the work having been performed under this act, the act itself does not provide for the means of doing the work, raising money,making assessments and collecting the funds necessary to pay for the improvement; in other words, whether this act shall not govern entirely in regard to the making of collections and assessments.
It will be necessary to look at this statute a little to see what has been done by the legislature in that act; I might say, the act has also a clause in regard to furnishing electric lights, and also for extending the system of the waterworks. This section does not enter into the consideration of this question, at all, here, and will simply be passed by.
Section 1 provides: “That the council of any village which had according to the federal census of 1890, or which at any subsequent census may have a population of-not less than 2320, nor more than 2350, is hereby authorized to improve and pave the streets of such village and to construct sewers, and to erect or purchase an electric light plant, and to extend the public waterworks of such village. ”
Section 2 provides: “That the council of such village is hereby authorized and empowered to borrow the sum of 115,000 for the purpose of improving and paving the streets of such village therefor; provided, however, that two-thirds of the cost for improving and paving any street, and of constructing a sewer under such paved part for which said street improvement fund shall be used, shall be assessed on the real estate abounding and abutting as provided by the laws of the state of Ohio: and one-third of the cost of improving, paving and sewering such paved part shall be paid out of the fund provided for in this act; and such council may also provide for the construction and payment by general taxation of the balance of such sewer in such manner as may seem to it best. After such improving and paving of any such street shall have been completed, the clerk of such village shall cer-tify said assessment to the auditor of the county in which *513 said village is located, who shall enter the same upon the tax duplicate of said county, and said assessment shall be collected as other taxes; when said taxes are collected, the same shall be placed to the credit of the sinking fund in such village, and be a part thereof.
“Such assessment shall be collected in twenty (20) semiannual installments, from and after the assessment thereof, but the owner of any such assessed property may; within ninety days after such assessments shall have been made, pay to the treasurer of such village the entire amount of bis or her assessment, together with the interest at six per cent, on said assessment to the date when the first semiannual installment is due, and such treasurer shall give a receipt in full for such assessment, and certify the same to the county auditor of said county, who shall place the same on the tax duplicate opposite such assessed property, ‘assessment paid to village treasurer,
Then it provides:
“Provided, however, that no such assessment shall be made and collected unless a majority of those owning, real estate bounding and abutting on any street thus improved shall have first signed a petition to said council praying for the Improvement of such street; and provided further, that said council shall have first found that a majority of such property owners shall have signed said petition, and a petition .signed either prior or subsequent to the passage of this act shall be sufficient.”
Section 5.
“For the purpose mentioned in the preceding section of this act, the council of any such village is hereby authorized to issue its bonds for all or any of the purposes named in said section, but in no case exceeding in amount the sum named in said section for each particular purpose named therein; all bonds issued under any section of this act shall bear a rate of interest not exceeding six per cent per annum, from date of issue; the principal of all such bonds and the interest thereon shall be payable at such times and places as the council of such village may by ordinance determine, not exceeding thirty years from the date of such bond, and said bonds shall be of such denominations not less than *514 $100, each, as the council of such village may by ordinance determine; the interest thereon shall be -payable semiannually, and all bonds so issued as provided under any section of this act shall be signed by the mayor of such village, and attested by the clerk,and no bonds shall be sold for less than their'par value in cash. All bonds issued under section 2 of this act shall be styled ‘street improvement bonds’; all bonds issued under section 8 of this act shall be styled ‘electric light plant bonds’, and all bonds issued under section 4 of this act shall be styled ‘water works extension bonds’, All such bonds shall be attested by the seal of the village, and when sold, the proceeds shall be paid to the treasurer of such village, who shall hold and disburse the same as other village funds are by him held and disbursed. No bonds issued under any section of this act, nor the proceeds arising therefrom, shall be used for any other purpose than that named for which any such bonds are issued. In addition to other taxes, the council of such village is hereby authorized and required to levy a sufficient tax upon all the taxable property in said village to meet and pay said bonds, and interest thereon, as the same shall become due and payable. ”
We have listened to the argument of counsel in the case and have endeavored to give the matter very careful attention, and we are compelled to come to the conclusion that this act provided in itself for the making of improvements and for the collection of the necessary funds; provides for the issuing of bonds for the various improvements, for the collection of taxes, in pursuance of and for the amount stated in this act, and that when a majority of those owning real estate bounding and abutting on the street to be improved shall sign a petition to the council, praying for the improvement of such street, and when the council has jurisdiction in the matter, they then have the right to proceed and make these improvements, and make them in the manner that is pointed out in the statutes, It will be seen that provision is made for borrowing money. It makes provision for uniting the two works, paving the streets and *515 making sewers underneath, all in one contract, in one act, or, as perhaps it might be better to say, one improvement, and’to make one assessment for that, and we think the counsel very forcefully argued that the intention of the legislature was that in making this it should be treated as a whole. It seems the intention is to'do this work as a unit, and with the object and purpose of having this statute passed, by which they may do this work, it is partially provided for by two separate chapters of the municipal code, and by each separate chapter a different method of procedure is provided, one for making the pavement, and one for sewers, and the manner of assessment for each. Thé village accepted this act, in order to perform this work under the one statute as one improvement, and to be paid as for one improvement.
Provisions are made for making assessments. The act provides that assessments are to be made as provided by the laws of the state of Ohio, provides that the assessment shall be certified to the auditor of the county to be entered upon the tax duplicate,and to be collected as other taxes.
The logical conclusion fiom that holding is that the section which provides for limiting the assessment to 25 per cent is inapplicable to this statute, and is to have no effect; in other words, the statute provides for collecting the whole assessment, and that the property is liable for the whole assessment.
That brings us to the general question as to how assessment shall be made, and the amount-in which they shall be made. As I have already stated, the counsel has sought to raise many questions upon the manner in which the work is done, and as to the correctness of the assessment that was made in that the council had accepted the work done, which it is claimed should not be included under the contract for the performance of the work, or should not be included in the assessment as part of the work performed under the proceedings by the city council.
*516 In regard to the question that has been made, as to the assessment for lake sand, I think we have already stated, perhaps as much as has been necessary in that regard, but I will repeat, that in the judgment of this court — and the rule is one that has been followed, so far as I know, for thirty years by this court — that all questions of that kind are included by the action of the common council unless it can be shown that the common council has been guilty of fraud; that is to say, in the distribution of the powers of government, duties and powers are assigned to different bodies, among others the improvement of the streets to the common council; they make the contract, they accept the work, find the amount of work that has been doné, whether it has been performed according to contract, etc. A great many arguments have been made by the learned and able counsel, but I have never yet seen the rule shaken in any case in which I have been engaged.
In regard to the sand used, I suppose it may be the fact that certain sand has gone in the improvement that was not lake sand, but both kinds of sand have to be used, and if you look at the evidence there is no evidence to show the amount of lake sand or other sand, and from the evidence as to the amount of each used no definite statement can be made. The matter was brought before the council who acted upon it. It approved the estimate, it approved the amount, and made the assessment. I know of no authority that is given to this court to change that assessment except it shall be found the proceedings were wrong, and the court will then proceed to make the assessment as pointed out in the statutes.
In regard to the drive-ways, we find the facts, as far as we have been able to ascertain by examination,to be that no provision was made in the original plans and specifications for these drive-ways. The work was to be done under the inspection and direction of a certain committee, a body of *517 engineers, and the work has been done under the direction of the same body. It has come before the council, and council has approved it, and we think that when they have done so, that the cost of the work should be assessed the same as the other pavings. It seems to us it was proper and legitimate for the council to order the class of work to be done as part of the improvement of the street, but we think the assessment should be made the same as the assessment for the rest of the pavement; that is to say,the two-thirds of it shall be assessed upon the property abutting upon the street,and the one-third is to be paid out of the general fund. I believe that covers all the points we wish to speak upon. We will make the order that the village pay one-fourth the costs, and plaintiff three-fourths.
Richards & Heffner and M. W. Hunt, for Plaintiff,
Finch, Dewey & Metzgar and J. C. Craig, for Defendant.